Bangor Bank v. Hook.

---

*The President, &c. of the* BANGOR BANK *vs.* HOOK.

The damages on a protested bill of exchange are not given as a liquidated arbitrary mulct; but as a compensation to the holder for the expense of remitting the money to the place where the bill ought to have been paid. And therefore if the holder receive part of the money of the acceptor, this diminishes the damages, *pro rata.*

The indorser of a bill of exchange is not liable for the costs of a suit commenced by the holder against the acceptor; nor for any commissions paid on the collection of part of the money of him.

ASSUMPSIT against the defendant as indorser of a bill of exchange for 3000 dollars, drawn by *Hutson Bishop* of *Belfast*, on *Alfred Curtis* of *Boston*, and by him accepted, but protested for non-payment.

It appeared, in a case stated by the parties, that the acceptor had been sued in *Boston,* and that the plaintiffs had there collected of him the amount of their judgment for the contents of the bill and costs of suit, except a balance of about 150 dollars; which they now claimed of the defendant; together with $49.20 for the customary commissions paid to the attorney for collecting and remitting the money; and damages at the rate of three *per cent.* on the *original amount* of the bill, with interest.

The defendant, upon the common rule, brought into the court below, the sum of 160 dollars, for the balance due upon the bill, and interest and three *per cent.* damages *on that balance only;* which the plaintiffs refused to accept.

*Williamson,* for the plaintiffs, contended that the defendant ought to pay the commissions paid by them to the attorney in *Boston,* as they were the ordinary and necessary charges incurred in making a collection wholly for the defendant's benefit. He also insisted that the plaintiffs were entitled to three *per cent.* on the whole amount of the bill; which, he said, was given by the statute in the nature of

---

Bangor Bank *v.* Hook.

---

liquidated damages, for breach of the contract as well in regard to the time, as to the place of payment. *Fletcher v. Dyche,* 2. *D. & E.* 32. *Lowe v. Peers,* 4. *Burr.* 2225. *Grimshaw v. Bender,* 6. *Mass.* 157. 1. *Dane's abr.* 420, sec. 1, *Stat.* 1821, *ch.* 88.

*Abbot,* for the defendant, argued that the statute introduced no new principle into the law-merchant; but only extended its rules to certain cases enumerated. The reason of giving damages, in any case, is, to reimburse the holder of the bill his expenses in transmitting his funds to the place where the bill ought to have been paid. But if the funds have actually been placed there by the acceptor, the reason ceases, and with it, the rule itself. As to the costs of the plaintiffs' proceedings against the acceptor, they are transactions *inter alios,* with which this defendant has nothing to do. *Copp v. McDugal,* 9. *Mass.* 1.

WESTON J. delivered the opinion of the Court.

Prior to an act of Massachusetts regulating damages on inland bills of exchange, which has been reenacted in this State, *Stat.* 1821, *ch.* 88, an allowance of this kind was by law limited to foreign bills, which had been dishonored. But by this act, it is extended to inland bills drawn or indorsed within the State, but payable without, or payable in the State, beyond certain limits prescribed. In order to determine under what circumstances it may be claimed, it may be useful to advert to its origin, and the principles by which it is regulated, in relation to foreign bills. By the law merchant, the holder of a foreign bill is entitled to recover the face of the bill, and the charges of the protest, with interest from the time when the bill ought to have been paid, and also the price of reexchange; so that he may purchase another good bill for the remittance of the money. Reexchange is the expense incurred by the bill being dishonored in a foreign country in which it was payable, and returned to the country in which it was made or indorsed, and there taken up. The amount of it depends on the course of the exchange between the countries, through which the bill has been negotiated. *Chitty on bills,* 544.

*Parsons C. J.* in delivering the opinion of the court, in *Grim-shaw v. Bender*, 6. *Mass.* 157, says, " the rule of damages estab-lished by the law merchant, is in our opinion absolutely controlled by the immemorial usage in this State. Here the usage is, to allow the holder of the bill the money for which it was drawn, reduced to our currency at par, and also the charges of protest, with American interest on these sums, from the time when the bill should have been paid ; and the further sum of one tenth of the money for which it was drawn, with interest upon it from the time payment of the dis-honored bill was demanded of the drawer. But nothing has been allowed for reexchange, whether it is below or at par." And he adds, " The origin of this usage was probably founded in the con-venience of avoiding all disputes about the price of reexchange, and to. induce purchasers to take their bills, by a liberal substitution of ten *per cent.* instead of a claim for reexchange." It is manifest, then, that the ten *per cent.* damages are given instead of reex-change ; and we must understand that the damages given by statute upon inland bills, are allowed upon the same principle ; that is, to indemnify the holder for the expense he incurs, or is supposed to incur, in receiving the money at the place where the bill is drawn, and transmitting it to the place of its destination, where it was originally made payable. That this is the only ground upon which these damages are given, is not only supported by a considera-tion of the reason upon which the claim is founded on foreign bills, but from the fact that, by the statute, the scale of damages in regard to dishonored inland bills, depends upon the distance of the State or territory, where payable, from this State. Distance is also made the criterion upon which damages are allowed upon bills of one hun-dred dollars or upwards, drawn or indorsed here, payable in another place within the State ; they being given only where that is distant seventy-five miles or more from the place of drawing or indorsing. If the disappointment, or considerations other than the expense of the reexchange, constituted the reason or basis of the damages, there seems no sufficient reason why they should not be allowed, where the place of payment is within the distance of seventy-five miles. Now if a bill made payable in a foreign country, protested

for non-payment or non-acceptance, is afterwards there paid and received, there arises no claim for reexchange; or that which is substituted here, the ten *per cent.* damages. So if it be partially paid and received abroad, at the place where made payable, this claim is reduced *pro tanto.* It is only where the bill is returned home, and there taken up, that this allowance can be demanded. The damages are incident to the principal. If that be paid, or as far as paid at the place appointed, the incident or accretion, which would otherwise attach to it, ceases. For the injury occasioned by the delay of payment, the law deems the interest an equivalent.

When the bill in question was dishonored, and the legal steps had been taken, by which to charge the defendant as indorser, the right of the plaintiffs to receive, and the liability of the defendant to pay, the damages given by the statute, accrued, and might have been enforced. The plaintiffs were under no obligation afterwards, either to sue the acceptor, or to receive from him the contents of the bill, without the damages to which they were entitled as against the drawer or indorsers. But when they did receive from the acceptor at *Boston,* the place where the bill was payable, the greater part of the bill, they may be considered, nothing appearing to the contrary, as having, *pro tanto,* waived and lost their right to the reexchange, or which is the same thing, the damages, which are a substitute therefor. We are, for these reasons, of opinion, that the three *per cent.* damages can in this case be allowed only upon the balance of the bill remaing unpaid, after deducting what was received in *Boston.*

As to the commissions paid by the plaintiffs to their attorney, we are not aware of any legal principle, by which they can be recovered against the defendant. The plaintiffs were not obliged to incur this expense. Their remedy was perfect against the defendant after the dishonor of the bill, without again resorting to the acceptor. If they thought proper to do so, they must themselves pay the agents they employ, for the reimbursement of which they can have no legal claim against the defendant, unless by express stipulation. The opinion of the court is, that the sum paid into court, by the defendant, was sufficient to cover the amount which the plaintiffs could sustain against him.